587 F.2d 1173
 190 U.S.App.D.C. 276
 HOLLAND-RANTOS COMPANY, INC., Petitioner,
v.
UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE,
Joseph Califano, Secretary of Department of Health,
Education and Welfare, Food and Drug Administration and
Donald Kennedy, Commissioner of Food and Drug
Administration, Respondents.
 No. 77-1892.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 30, 1978.
Decided July 17, 1978.
 
 F. Kaid Benfield, Washington, D. C. with whom, Charles H. Barr, Richland, Wash., was on the brief, for petitioner.
 Patricia J. Kenney, Atty. for Dept. of Justice, Washington, D. C., with whom John H. Shenefield, Asst. Atty. Gen., Charles R. McConachie, Atty., Dept. of Justice, Washington, D. C., Richard M. Cooper, Chief Counsel, Rockville, Md., Eric M. Blumberg, Associate Chief Counsel for Enforcement for Food and Drug Administration, Washington, D. C.
 Before BAZELON, LEVENTHAL and ROBINSON, Circuit Judges.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 Holland-Rantos Co. petitions this court to set aside an order of the Commissioner of the Food and Drug Administration (FDA) denying a hearing and withdrawing approval from the new drug application (NDA) of Nylmerate Jelly. See 42 Fed.Reg. 49521 (1977). Petitioner argues that summary judgment is inappropriate because it has presented evidence of adequate and well-controlled investigations demonstrating the effectiveness of Nylmerate for Haemophilus vaginalis vaginitis. As a second ground for relief, petitioner urges that FDA acted arbitrarily by disregarding, without explanation and without a hearing, the recommendation of the National Academy of Sciences-National Research Council (NAS-NRC) Drug Efficacy Study Group that Nylmerate be considered "effective" for treatment of Haemophilus vaginalis vaginitis.[1] See Fed. Reg. 15030 (1972). We affirm the Commissioner's order.
 
 
 2
 It is clear that summary judgment is appropriate if petitioner has not submitted any evidence that on its face meets FDA's regulatory standards for adequate and well-controlled investigations. See 21 U.S.C. § 355(d);21 C.F.R. § 314.111(a)(5)(ii) (1977); Weinberger v. Hynson, Wescott & Dunning, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). Holland-Rantos, however, claims to have submitted an investigation by Dr. Herman Gardner that meets FDA's regulatory standards. See Joint Appendix (J.A.) at A-93-A-100. The Gardner study compared Nylmerate's efficacy against that of Sultrin Cream, a drug known to be effective. See 21 C.F.R. § 314.111(a)(5)(ii)(a)(4)(iii) (1977). The observed rate of remission for Sultrin Cream was 56.5%; that for Nylmerate was 27.6%. Nylmerate thus was not shown to be as effective as Sultrin, the active control.
 
 
 3
 Petitioner nevertheless contends that the Gardner study meets FDA regulatory standards because it is "well-controlled." We decline to interpret FDA's regulations in so self-defeating a fashion. The point of a control is to provide a basis of comparison from which the action of an experimental agent may be measured. When a well-controlled study relates an experimental agent to a control that is known to be effective, it yields meaningful results only if the remission rate associated with the experimental agent is at least as high as that of the control. If the experimental agent yields a remission rate that is less than that of the control, nothing is demonstrated as to the efficacy of the experimental agent, for it cannot be inferred from the study whether that lower remission rate is any higher than what would have been achieved by no treatment or a placebo. If it is to be demonstrated that the experimental agent is more effective than no treatment or a placebo, then the agent must be compared to no treatment or a placebo in an appropriately well-controlled study. Although petitioner argues that the 27.6% Remission rate observed for Nylmerate in the Gardner study proves that Nylmerate is more effective than no treatment, this conclusion has not been established by a well-controlled study. The Gardner study, while well-controlled, compared Nylmerate to Sultrin; and that comparison produced no evidence of Nylmerate's efficacy.[2]
 
 
 4
 We are concerned at FDA's refusal without reasons to accept the NAS-NRC panel's recommendation that Nylmerate be considered "effective" in the treatment of Haemophilus vaginalis vaginitis. FDA's cavalier and unexplained rejection of the opinion of its expert panel strains a "cornerstone requirement" of the administrative process, that of "reasoned decision making." Columbia Broadcasting System, Inc. v. FCC, 147 U.S.App.D.C. 175, 182, 454 F.2d 1018, 1025 (1971). Nevertheless, in the circumstances of this case, we conclude that this behavior does not constitute sufficient grounds to set aside the Commissioner's final order.
 
 
 5
 In 1962 the Federal Food, Drug, and Cosmetic Act was amended to prohibit the introduction into commerce of any "new drug," See 21 U.S.C. § 321(p), without substantial evidence that the drug was effective for its intended uses. See 21 U.S.C. § 355(d). Since the amended Act required " affirmative agency approval, all NDA's 'effective' prior to 1962 were deemed 'approved' under the new definition, and manufacturers were given two years to develop substantial evidence of effectiveness, during which previously approved NDA's could not be withdrawn by FDA for a drug's lack of effectiveness." Weinberger v. Hynson, Wescott & Dunning, 412 U.S. 609, 614, 93 S.Ct. 2469, 2475, 37 L.Ed.2d 207 (1973).[3] Faced with "the massive task of reevaluating almost all marketed drugs," SmithKline Corp. v. FDA, 190 U.S.App.D.C. --- at ---, 587 F.2d 1107 at 1112 (D.C.Cir., 1978), a task hopelessly beyond FDA's administrative capabilities, FDA turned for assistance to the NAS-NRC panels, which reviewed by class the efficacy of previously marketed new drugs. See 31 Fed. Reg. 9426 (1966). If a panel rated a drug "effective," it meant that the manufacturer of the drug was excused from the requirement of producing substantial evidence of the drug's effectiveness; any other rating meant that the manufacturer had to submit the adequate and well-controlled investigations required by the Act. See 21 U.S.C. § 355(d). The recommendations of the NAS-NRC panels are advisory in nature. See Upjohn Co. v. Finch, 422 F.2d 944, 948 (6th Cir. 1970).
 
 
 6
 In these circumstances any remedy this court might afford petitioners would be futile. FDA's decision not to accept the NAS-NRC panel's rating of "effective" was essentially a judgment that petitioner had not yet offered substantial evidence of Nylmerate's effectiveness and should be put to its proof, as the statute affirmatively required. Subsequent events have vindicated this judgment, since petitioner has been unable to produce the necessary adequate and well-controlled studies. It would constitute the most arid formalism for this court to remand this case to FDA to require it to state what has since become obvious; namely, its reasons for concluding that, contrary to the recommendation of the NAS-NRC panel, petitioner had not yet demonstrated the effectiveness of Nylmerate under statutory standards.
 
 The order of the Commissioner is therefore
 
 7
 Affirmed.
 
 
 
 [1]
 Petitioner also urges that FDA's Notice of Opportunity for Hearing, See 38 Fed. Reg. 22994 (1973), was fatally deficient because it failed to reveal the basis for the agency's less than "effective" classification of Nylmerate. We reject this contention. FDA's Notice clearly stated that its reason for proposing to withdraw approval of Nylmerate's NDA was that there was a lack of "substantial evidence of effectiveness for the various labeled indications." FDA can reach this conclusion on the basis of a reevaluation of existing research data. See Bell v. Goddard, 366 F.2d 177, 181 (7th Cir. 1966). Under these circumstances, we consider the Notice sufficiently specific to inform petitioner of the grounds of the proposed withdrawal. See Weinberger v. Hynson, Wescott & Dunning, 412 U.S. 609, 622, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973)
 
 
 [2]
 Petitioner urges that the 27.6% Cure rate is significant because Haemophilus vaginalis vaginitis does not resolve spontaneously. Whether or not Haemophilus vaginalis vaginitis resolves spontaneously, however, is irrelevant to the pertinent legal conclusion, which is that the effectiveness of Nylmerate has not been demonstrated by any adequate and well-controlled investigations which on their face meet FDA's regulatory criteria
 
 
 [3]
 The NDA for Nylmerate was first approved on July 17, 1945